IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-00064-01-CR-W-DGK |
| ROBERT LORENZO HESTER, JR., | |
| Defendant. | |

## SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum in support of its recommendation that this Court sentence defendant Robert Lorenzo Hester, Jr., to a Guidelines sentence of 240 months' imprisonment followed by a lifetime term of supervised release.

As detailed in the factual basis of his plea agreement, Hester actively attempted to plot a mass casualty attack with others that he believed were acting on behalf of ISIS. Hester drew the attention of law enforcement through advocating violence on social media, and when contacted by undercover officers, he immediately showed that he wanted action in addition to words. Law enforcement engaged Hester to see if he was truly committed to an act of terrorism, and his responses left no doubt that he was. While law enforcement found him first, others seeking the same goals could have just as easily reached out instead, resulting in tragedy. Seeking to kill on a wide scale for hate-filled ends is an extremely aggravated crime, which the Guidelines account for accordingly. The Guidelines recommend a sentence of 240 months, and only a sentence of that magnitude will be sufficient but not greater than necessary to further the purposes of 18 U.S.C. § 3553(a) and deter Hester and others who may be tempted by ISIS's clarion call.

## I. Background

After Hester's arrest following an undercover investigation where he attempted to plot a mass casualty attack he believed to be on behalf of ISIS, a grand jury returned a two-count indictment charging Hester with attempted provision of material support to terrorists, in violation of 18 U.S.C. § 2339A (Count One); and attempted provision of material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B (Count Two). (D.E. 1, 6, 8.) Pursuant to a written plea agreement, Hester pled guilty to Count Two, which provides for a maximum sentence of 20 year's imprisonment. (D.E. 48, 49.)

In Hester's plea agreement (D.E. 49), the parties made the following stipulations regarding the application of the Sentencing Guidelines:

- The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2M5.3, which provides for a base offense level of 26 (¶ 10.b.);

- Pursuant to U.S.S.G. § 2M5.3(b)(1)(E), there is a two-level enhancement because the Hester provided material support or resources with the intent, knowledge, or reason to believe the resources were to be used to commit or assist in the commission of a violent act (¶ 10.c);

- The terrorism enhancement of U.S.S.G. § 3A1.4 applies to Hester's offense of conviction, meaning his offense is enhanced 12 levels and his criminal history category is VI (¶¶ 10.d. and 10.f.); and

- Subject to the conditions detailed in his plea agreement, Hester is entitled to a three-level reduction for acceptance of responsibility pursuant to § 3E1.1(b) due to his timely acceptance of responsibility (¶ 10.e.).

Those stipulations result in total offense level of 37, a criminal history category of VI, and recommended Guidelines range of 360 months to life, though Hester's sentence is capped by the statutory maximum of 240 months. Hester's plea agreement also provides that the "United States anticipates recommending a sentence of 240 months' imprisonment," and Hester "agrees not to seek or otherwise recommend a sentence below 180 months' imprisonment." (D.E. 49 ¶ 10.h.) Those recommendations are not binding on this Court. (D.E. 49 ¶ 10.h.)

-2-

Case 4:17-cr-00064-DGK   Document 53   Filed 02/18/20   Page 2 of 11

Hester's final presentence investigation report (PSR) recommends the same Guidelines calculations as his plea agreement. (PSR ¶¶ 39-48, 52, 88, 89.) Because the statutory maximum for Count Two is 20 years, Hester's PSR recommends 240 months' imprisonment. (PSR ¶ 88.) Because Hester's offense of conviction is a federal crime of terrorism as defined by 18 U.S.C. § 2332b(g)(5)(B), pursuant to 18 U.S.C. § 3582(j), Hester also faces a possible lifetime term of supervised release. (D.E. 49 ¶¶ 5, 6.c.; PSR ¶ 90.)

## II. Offense Conduct

Attachment A to Hester's plea agreement provides a detailed summary of Hester's offense. In summary, Hester drew the attention of the FBI by using a number of aliases to anonymously post in support of ISIS and violence on social media. Several confidential sources found Hester's posts troubling and contacted the FBI. To gauge whether Hester posed a threat of violence, the FBI began its investigation by reaching out to Hester on social media.

Before the FBI could meaningfully correspond with Hester, local police arrested him for felony property damage and unlawful use of a weapon. During an argument with his wife, Hester threw a folded pocketknife through a front window pane of a large grocery store. When store employees confronted him, Hester aggressively reached into a bag that he had slung over his shoulder as if to pull out weapon and threatened the employees that he would "do it." The bag contained a 9mm handgun. During the investigation in this case, Hester pled guilty to two felonies related to this incident.

Once Hester was released on bond after the handgun incident, an FBI undercover employee reached out to him on social media. Within the first few days of their discussions, Hester explained that he believed the Government should be overthrown and he was open to discuss plans with others who wanted to do the same thing. Hester almost immediately moved their conversations from

-3-

Case 4:17-cr-00064-DGK   Document 53   Filed 02/18/20   Page 3 of 11

social media to an encrypted messaging application as a security measure. On the encrypted app, Hester explained that he wanted to attack critical infrastructure, such as oil production and federal buildings. Hester had previously received a general discharge from the United States Army, and during his conversations with the online undercover, he touted his knowledge of firearms and military tactics. He even suggested an attack on a military base because he knew how to enter it.

To further evaluate Hester's intent to commit a mass casualty attack, the FBI introduced Hester to another undercover employee. Hester met this second undercover in person, and again their conversations quickly turned to radical Islam and Hester's ideas for conducting a violent attack that would have more impact than "three or four guys . . . shooting up somewhere." Hester wanted to hurt the economy "by hitting oil pipelines" or "computer systems." Throughout their conversations, the undercover employee provided Hester a number of opportunities to dissociate with no questions asked, but Hester repeatedly reaffirmed his commitment to their plot.

Over the following months, Hester remained in contact with both undercover employees, reiterating his desire to assist with planning an attack. To eliminate the risk of Hester planning an attack that law enforcement did not know about, the undercovers instructed Hester that he could not share their discussion with anyone, and Hester complied. Hester told the undercovers about two incidents during which he shot at other persons, but the FBI was not able to confirm that either took place. Hester also took a number of steps to help facilitate the plot, such as buying simple supplies he believed would be used to make bombs and researching storage facilities to store supplies for the attack. Hester also broke and discarded a cell phone provided to him by the undercover employees to prevent law enforcement from getting the device.

During one of their final in-person meetings, the undercover employee showed Hester a number of firearms and purported bombs that the undercover employee stated would be used for an

attack. This excited Hester, who adamantly approved. Hester understood that the plan was to cause mass casualties, and he was excited to assist. The undercover employee who contacted Hester online explained what the attack would be and stated that they needed shrapnel for their bombs. During his next and final in-person meeting, Hester brought two boxes of roofing nails for that very purpose.

### III. Sentencing Recommendation

This Court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a). As shown below, a Guidelines-recommended, statutory-maximum sentence of 240 months, followed by a lifetime term of supervised release, is the only sentence available that satisfies that mandate.

**A.** *The Nature and Circumstances of Hester's Concerted Efforts to Plot and Help Carry Out an Attack on Behalf of ISIS Warrants a 240-Month Sentence.*

The nature and circumstances of this offense clearly call for a Guidelines sentence. Hester sought to aid a deadly foreign terrorist organization and undermine American national security. He started on social media, using several aliases to anonymously proselytize ISIS's call to violence to whoever would follow him. When law enforcement reached out to judge whether he wanted to act on his words, he immediately and readily began sharing his plans for an attack. He continued that planning over the course of several months, seeking to conceal his communication through an encrypted messaging application and covert meetings. Hester repeatedly glorified violence, and proclaimed his excitement to help ISIS carry out a terrorist attack. Hester thought he was assisting in a plan to cause widespread deaths, doing everything he could to help.

Hester did not act in a vacuum. His conduct was part of a larger movement of growing support for ISIS in the United States and abroad. ISIS depended upon radicalization online, and especially through social media, to bring its persistent threat of violence to the United States and

throughout the world. That Hester heard that call to violence, pronounced it, and sought to carry through on it, presented a significant threat of mass violence. Hester's conduct was severe, and the risk of violence he created through his attempted contribution to ISIS's terrorizing mission cannot be overstated.

B. *<u>The History and Characteristics of Hester also Demonstrate the Reasonableness of a Substantial Sentence</u>*.

No sooner had the FBI identified Hester and began its investigation to determine whether he presented a real threat of violence, Hester showed through his actions that he did. In early October 2016, at the beginning of the FBI's investigation, Hester threw a folded pocket knife through a plate-glass window near the entrance of a large grocery store. (D.E. 49, Attachment A ¶ 9.) When confronted by store employees, Hester reached into a diaper bag that contained a 9mm handgun, and aggressively yelled that the employees did not want "any of this" and that he would "do it." (D.E. 49, Attachment A ¶ 9.) This incident showed that Hester was in melt-down and was headed toward violence, one way or another.

Additionally troubling, Hester's training equipped him to bring mass violence about. Hester received a general discharge from the Army, where he received firearms and other military training. (D.E. 49, Attachment A ¶ 6.) Hester understood the value of that training to a terrorist attack, and noted that training in his communications planning an attack. (D.E. 49, Attachment A ¶ 17.)

In an effort to put aside his past violent behavior, the United States anticipates that Hester will likely ask this Court for leniency based on any number of personal factors – such as a history of mental illness and substance abuse – but none of those personal considerations warrant any variance from a recommended Guidelines sentence. Nothing described in paragraphs 65 through 74 of Hester's PSR, suggests that he suffered from any mental defect that lessened his judgment

or made him unusually susceptible to influence. Rather, he was of clear mind when he began plotting to indiscriminately take innocent lives. Hester knowingly and voluntarily committed this crime, and this Court should hold him fully accountable.

C. ***A Sentence of 240 Months Will Adequately Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment to Hester as Required by § 3553(a)(2)(A).***

A 240-month sentence will reflect the gravity of the offense, promote respect for the law, and provide for just punishment. This is a very serious, federal, felony offense. The seriousness of the offense is heightened by the very real peril Hester presented to the public. At the time of his crime, ISIS was actively using social media to solicit persons in the United States to carry out violence in its name. That threat of violence was very real, and 240 months' imprisonment is the only available sentence that meets the goals of § 3553(a)(2)(A).

D. ***A Sentence of 240 Months Would Afford Adequate Deterrence to Criminal Conduct as Required by § 3553(a)(2)(B), While Any Shorter Sentence Would Not.***

No sentencing factor weighs more heavily in favor of a 240-month sentence and a lifetime term of supervised release than the need to afford adequate deterrence to criminal conduct. With regard to specific deterrence, Hester is a recidivist regarding violent conduct, and at the time of his offense, his desire for violence was escalating. In addition, his advocacy for violence online, while aggravating in itself, merits constant oversight once he is released. With regard to general deterrence, a 240-month sentence provides strong notice to the public that attempts to plot mass casualty attacks for purpose of terrorizing the public will be punished severely.

E. ***A Sentence of 240 Months Fully Embraces the Available Statutory Sentence and the Recommendations of the Sentencing Guidelines as Required by §§ 3553(a)(3) and (4).***

Courts have repeatedly emphasized that persons convicted of terrorism offenses should receive lengthy sentences. *See United States v. Ali*, 799 F.3d 1008, 1031 (8th Cir. 2015) ("'[E]ven terrorists with no prior criminal behavior are unique among criminals in the likelihood of

recidivism, the difficulty of rehabilitation, and the need for incapacitation.'") (quoting *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003)). In doing so, courts have denied challenges to the terrorism enhancement increasing both a defendant's offense level and criminal history category. *See Ali*, 499 F.3d at 1031; *Meskini*, 319 F.3d at 92 ("Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time."). A sentence of 240 months is the only available sentence that properly accounts for the will of Congress and the Sentencing Commission in this case.

### F. *A Sentence of 240 Months Would Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct as Required by § 3553(a)(6).*

A sentence of 240 months for Hester would avoid unwarranted sentencing disparities as it is in line with, if not a bit below, sentences imposed on "defendants with similar records who have been found guilty of similar criminal conduct." 18 U.S.C. § 3553(a). The Eighth Circuit has made clear that this Court does not have to "compare and contrast the defendant under consideration with a similar offender who has been sentenced by another federal judge." *United States v. McElderry*, 875 F.3d 863, 864 (8th Cir. 2017) (quotation omitted). Nonetheless, three sentenced defendants in other districts whose conduct is similar to Hester's – because like Hester, they used social media in support of ISIS – show that Hester should receive a Guidelines-recommended, statutory-maximum sentence.

Terence McNeil pled guilty to multiple counts of solicitation to commit murder of officers and employees of the United States, in violation of 18 U.S.C. § 373, and making threatening interstate communications, in violation of 18 U.S.C. § 875(c). *See United States v. McNeil*, 15-cr-0446-DAP, D.E. 90 (N.D. Ohio). McNeil maintained social media accounts on several websites,

including Facebook, Twitter, and Tumblr, and his offenses involved reposting the addresses of United States military personnel and civilian employees that had originally been posted by ISIS along with exhortations to kill. *McNeil*, D.E. 96 at 1-4. McNeil was between 21 and 22 years-old when he committed these offenses, and like Hester he did not attempt to travel overseas. Notwithstanding, the district court sentenced him to 20 years' imprisonment and a lifetime term of supervised release. *McNeil*, D.E. 98.

Hasan and Jonas Edmonds both pled guilty to conspiring to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, along with other crimes that extended their statutory ranges of punishment beyond 20 years. *See United States v. Edmonds*, No. 15-CR-00149, D.E. 53-58 (N.D. Ill.) Like in this case, Hasan Edmonds began communicating with an undercover FBI employee on social media, and later he and Jonas Edmonds met a second undercover employee in person. *Edmonds*, D.E. 1 ¶¶ 21-44, 53-75. Also like this case, Jonas Edmonds expressed a desire to commit an attack on a National Guard Amory outside of Chicago on behalf of ISIS using Hasan Edmonds's National Guard uniform to bypass security. *Edmonds*, D.E. 1 ¶ 74. The court sentenced Hasan Edmonds to a statutory maximum 30 years' imprisonment followed by 20 years of supervised release and sentenced Jonas Edmonds to 21 years' imprisonment pursuant to a binding plea agreement, under Rule 11(c)(1)(C), followed by 20 years of supervised release. *Edmonds*, D.E. 54, 57, 90, 92.

These cases are not unique. And although there are cases in which defendants involved in similar conduct received sentences slightly below 240 months, those cases often involved binding plea agreements and motions by the United States pursuant to U.S.S.G. § 5K1.1. Because such motions were filed under seal, the United States is not identifying those cases in this memorandum,

but notes them to further show that such cases involve circumstances not present in this case and in no way undermines 240 months as the sentence for Hester.

## IV Conclusion

For the reasons stated above, the United States respectfully requests that this Court sentence defendant Robert Lorenzo Hester, Jr., to 240 months' imprisonment and a lifetime term of supervised release.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney

By    */s/ Brian P. Casey*

BRIAN P. CASEY
DAVID RASKIN
Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed on February 18, 2020, with the Clerk of Court using the CM-ECF system of the United States District Court for the Western District of Missouri thereby sending notification of the filing to CM-ECF participants in this matter.

/s/ Brian P. Casey
Brian P. Casey
Assistant United States Attorney